UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAMES HICKS, | No. 2:25-cv-1234 CSK P |
| Plaintiff, | |
| v. | ORDER |
| T. BZOSKIE, et al., | |
| Defendants. | |

      Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This proceeding was referred to this Court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

      Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

      Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the Court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff is obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

Plaintiff is granted an opportunity to elect to proceed on his Eighth Amendment claims as to defendants Dr. T. Bzoskie, Dr. Scrubbs, T. Heng, CCII, and J. Garry, Associate Warden, all employed at California Medical Facility, and defendant S. O'Connor, a correctional officer at Mule Creek State Prison ("MCSP"), or may elect to amend his complaint as discussed below.

I.   SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations

1  sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.
2  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the
3  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.
4  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal
5  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as
6  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the
7  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236
8  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

II.     PLAINTIFF'S ALLEGATIONS

In his verified complaint, plaintiff alleges the following.  Plaintiff is a high risk medical patient, diagnosed with complex cardiovascular disease, has undergone triple bypass surgery, four arterial stents since 2021, and has frequent transient ischemic attack ("TIA") strokes, and takes nine prescription medications for his heart and hypertension. (ECF No. 1 at 11, 13.)  The TIA strokes cause dizziness, numbness in plaintiff's face and right hand, inability to speak and atrial fibrillation. (Id. at 11.)  In late 2023, plaintiff's primary care physician upgraded plaintiff's medical classification to specialized outpatient housing ("SOP") with medium intensity nurse monitoring as a medical precaution that requires headquarters approval to ensure rapid accessibility to a major heart hospital or university.  (Id. at 11.)  After plaintiff settled his prior case, Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P (E.D. Cal.), plaintiff was transferred to the California Medical Facility ("CMF"), where plaintiff positively programmed for three months.  However, on December 10, 2024, plaintiff sustained a rules violation report ("RVR") for battery and was put in restrictive housing ("RHU").[1]  (Id. at 14.)  While housed in the RHU, plaintiff suffered a stroke on December 10, 2024, and was admitted to Vaca Valley Hospital.  That same day, defendant Heng asked defendant Dr. Bzoskie to reduce plaintiff's level of care to "outpatient" in order to "facilitate greater prison transfer options."[2]  (Id. at 14-15.)  Dr. Bzoskie

---

[1] Plaintiff, a level IV prisoner, admits that he is difficult to place due to his high classification score, repeated RVR's, and numerous enemies throughout the CDCR.  (ECF No. 1 at 12.)

[2] Plaintiff explains that the CDCR has three major medical classifications:  basic, intermediate

3

lowered plaintiff's medical level of care without examining plaintiff and at that time, neither defendant Heng nor Dr. Bzoskie knew plaintiff had been admitted to the hospital. (Id. at 15.) On January 8, 2025, plaintiff appeared before the classification committee where he learned that defendants Heng and Garry were transferring plaintiff to a basic care facility without HCPOP oversight. (Id.) When plaintiff objected that the transfer would put him at risk of harm, defendant Garry told plaintiff he "needed to be held accountable for his behavior." (Id.) Subsequently, plaintiff was admitted to the crisis bed at CMF from January 20, 2025, until his discharge on January 31, 2025. (Id.) Plaintiff contends that defendant Scrubbs refused to consult with plaintiff while he was in the crisis bed, in violation of crisis bed policy and procedure. (Id.)

On January 22, 2025, plaintiff saw defendant Dr. Uppal, who ordered a walker for plaintiff due to repeated falls in his cell. (Id. at 16.) But later that same day, defendant Dr. Scrubbs cancelled the walker order without examining plaintiff, noting the cancellation was for "another reason." (Id.) On January 27, 2025, defendant Dr. Uppal reordered the walker in light of plaintiff's repeated falls. (Id.) Dr. Uppal told plaintiff that he was instructed by email from the "custody administration" not to alter plaintiff's medical classification; when plaintiff objected, Dr. Uppal responded that he had to follow the administration's mandate and plaintiff should address the issue with his primary care physician after plaintiff's transfer. (Id. at 17.)

On February 1, 2025, plaintiff was transferred to Kern Valley State Prison ("KVSP"). (Id.) Plaintiff filed two requests for accommodation to be housed in an intermediate prison where he could be assigned to the SOP. (Id.) After he filed the second request on February 25, 2025, he was twice admitted to Adventist Hospital for stroke workup. (Id. at 17-18.) Upon his return to KVSP, he was seen by defendants Dr. Zepp and F. Garmenda, who examined plaintiff but "professed ignorance in raising plaintiff's level of care to SOP," and instructed the RN to "look into the procedure." (Id. at 18.) On March 7, 2025, defendant R. Nuckles responded to plaintiff's first request for accommodation, reciting plaintiff's classification history from February 27 to

---

and central. (ECF No. 1 at 12.) Prisoners who are medically classified as intermediate or central require oversight and placement by CDCR headquarters' Health Care Placement Oversight Program ("HCPOP") unit. (Id.)

1  March 8, 2025, but failing to address plaintiff's request, instead stating plaintiff's current medical
2  classification was "outpatient." (Id.)  Plaintiff filed a grievance to the Office of Appeals on April
3  2, 2025, and on April 13, 2025, submitted a government claims form appending his first request
4  for accommodation.  On March 10, 2025, plaintiff was transferred to the MCSP EOP HUB RHU,
5  where he continues to suffer TIA strokes.  Defendant Doe No. 1 saw plaintiff, who complained he
6  was being denied SOP classification; Doe No. 1 agreed and said she would look into it.  (Id. at
7  18-19.)  On April 16, 2025, plaintiff suffered another TIA stroke and was escorted to the triage
8  treatment area where plaintiff discussed his level of care with defendant Dr. S. Wong, who noted
9  plaintiff's complex medical issues needed to be under SOP level of care, and told plaintiff Dr. S.
10 Wong would schedule a follow-up appointment with plaintiff's primary care physician rather than
11 initiate the process to change plaintiff's level of care.  (Id. at 19.)  On April 21, 2025, the date of
12 plaintiff's follow-up appointment, the appointment was cancelled without cause by Doe No. 2
13 (RN).  (Id. at 19.)  On April 23, 2025, plaintiff suffered another stroke with dizziness and chest
14 pain around 8:42 a.m.  Plaintiff asked a nearby inmate to notify custody that plaintiff needed
15 medical care.  (Id. at 20.)  The inmate did so, but defendant Guzman "smiled and waved at
16 plaintiff at approximately 8:46 a.m."  (Id.)  Plaintiff complained to another correctional officer,
17 defendant Doe No. 2, who stated "I'll let medical know," yet took no further action.  (Id.)  At
18 9:07 a.m. and 9:13 a.m., plaintiff told defendant S. O'Connor that plaintiff was having chest pain
19 and needed to see medical, but S. O'Connor did not inform medical until 9:17 a.m.  (Id.)  No one
20 from medical responded, and plaintiff had another TIA stroke with aphasia, numbness and
21 difficulty swallowing.  (Id.)  Plaintiff was finally able to summon medical care at 2:45 p.m. via
22 correctional officer Spencer who relayed "chest pain" to medical.  (Id.)  But medical's response
23 was by defendant Doe No. 3, who said that plaintiff had already been talked to and refused to take
24 plaintiff's blood pressure or speak with him.  (Id.)
25 III.     EIGHTH AMENDMENT STANDARDS
26        The Eighth Amendment protects prisoners from inhumane methods of punishment and
27 inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.
28 2006).  Extreme deprivations are required to make out a conditions-of-confinement claim, and

"only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted), abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 127 (2007). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Lewis, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Id. (citations omitted).

To state a claim on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[ ] of and disregard[ ] an excessive risk to inmate health.'" Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (*en banc*) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

It is well established that "a mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (alterations in original) (citation omitted). This rule applies whether the difference is between the medical professional(s) and a prisoner or two or more medical professionals. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted).

In appropriate cases, however, a prisoner may state a claim of deliberate indifference to medical needs based on a difference of medical opinion. To do so, the prisoner must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to [the prisoner's]

health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted), overruled in part on other grounds by Peralta, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc).

IV.     DISCUSSION

    A.  Named Defendants

After conducting the screening required by 28 U.S.C. § 1915(a), the Court finds that plaintiff has adequately stated potentially cognizable Eighth Amendment claims against defendants Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, and Dr. A. Scrubbs, all employed at CMF, based on their intentional interference with plaintiff's serious medical needs, and against defendant S. O'Connor, employed at MCSP, based on S. O'Connor's failure to call for medical help sooner, after which plaintiff suffered another stroke.

Plaintiff's Eighth Amendment claims against the remaining defendants are too vague and conclusory to state cognizable claims. Plaintiff does not state a cognizable claim against defendant Dr. H. Uppal, who ordered a walker for plaintiff on two occasions. Plaintiff's allegation that defendant Dr. H. Uppal could not alter plaintiff's medical level of care as ordered by administration, standing alone, is insufficient to demonstrate that Dr. H. Uppal acted with a culpable state of mind. Similarly, plaintiff's claims against defendants Dr. Zepp and Dr. F. Garmenda at KVSP are also insufficient. Although plaintiff believes these doctors were feigning ignorance about the SOP procedure, the facts alleged do not show they were deliberately indifferent. Rather, plaintiff alleges that both doctors instructed the RN to "look into the procedure." (ECF No. 1 at 18.) Plaintiff's allegation as to defendant Dr. S. Wong, who treated plaintiff at MCSP on April 16, 2025, is also insufficient. Indeed, plaintiff alleges that Dr. S. Wong agreed that plaintiff should be under the SOP level of care, but chose to defer the issue to plaintiff's primary care physician, and scheduled plaintiff for a follow-up visit with his physician on April 21, 2025. Plaintiff does not allege that Dr. Wong cancelled the follow-up appointment. At most, plaintiff's allegation as to Dr. S. Wong constitutes a difference of opinion, which does not rise to the level of an Eighth Amendment violation. See Toguchi, 391 F.3d at 1058.

Plaintiff's disagreement with how defendant R. Nuckles, Associate Warden, responded to plaintiff's first request for accommodation, standing alone, is also insufficient to state a

7

cognizable Eighth Amendment claim. Finally, plaintiff's claims against defendant A. Guzman fails to state a cognizable claim. The sole allegation as to defendant A. Guzman is another inmate told A. Guzman that plaintiff needed medical help, and A. Guzman "smiled and waved." (ECF No. 1 at 20.) Unlike defendant S. O'Connor, there is no allegation that defendant A. Guzman was aware plaintiff was suffering from chest pain, or that A. Guzman was aware of plaintiff's medical history. Plaintiff's vague allegation as to A. Guzman is insufficient to state a deliberate indifference claim.

B. Doe Defendants

Plaintiff identifies four defendants as "Doe defendants:" (1) Doe #1, plaintiff's primary care physician at MCSP RHU (ECF No. 1 at 2, 4); (2) Doe #2, RN, MCSP EOP RHU (id.); (3) Doe #3, Correctional Officer, MCSP EOP RU, 8:46 a.m. (id. at 2, 5); and (4) Doe #4, Psych Tech, MCSP EOP RHU, 2:45 p.m. (id.).

*1. Doe #1*

After plaintiff was transferred to MCSP on March 10, 2025, plaintiff complained to Doe #1 that he was being denied SOP classification; Doe #1 "agreed and stated that she would 'look into it.'" (ECF No. 1 at 19.) Plaintiff's allegation as to Doe #1 is insufficient to state a deliberate indifference claim. Doe #1 agreed with plaintiff, and told him Doe #1 would look into it. Absent an allegation that Doe #1 failed to look into it, plaintiff's allegation as to Doe #1 does not state a claim. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

*2. Doe #2*

On April 21, 2025, plaintiff was scheduled for an appointment but Doe #2, an RN, cancelled the appointment "without cause." (ECF No. 1 at 19.) This was an important appointment following plaintiff's appointment with Dr. S. Wong, who opted to have plaintiff's primary care physician begin the process to change plaintiff's level of care. Plaintiff may be able to discover evidence demonstrating Doe #2's culpable state of mind.

///

### 3. Doe #3

Following the exchange with defendant A. Guzman, at 8:46 a.m., plaintiff complained again to Doe #3,[3] a correctional officer, who responded, "I'll let medical know," yet took no further action. (ECF No. 1 at 20.) Plaintiff's allegations as to Doe #3 are insufficient because plaintiff does not indicate what he told Doe #3. Therefore, similar to plaintiff's claim against defendant A. Guzman, it is unknown whether plaintiff told Doe. #3 that plaintiff was suffering from chest pain, or if Doe #3 was aware of plaintiff's medical history. Plaintiff's vague allegation as to Doe #3 is insufficient to state a deliberate indifference claim.

### 4. Doe #4

Finally, plaintiff alleges that when CO Spencer summoned medical care for plaintiff at 2:45 p.m., Doe #4[4] responded that "plaintiff had already been talked to and they refused to take plaintiff's blood pressure or speak with him." (Id. at 20.) Because plaintiff's allegations show plaintiff had not received medical care, plaintiff states a cognizable claim as to Doe #4.

### 5. Discussion

Plaintiff's use of Doe defendants is problematic, see Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), and ultimately unnecessary. Rule 15 of the Federal Rules of Civil Procedure, not state law "Doe" pleading practices, governs whether new defendants may be added and if so, whether the claims against them would relate back to the filing of the initial complaint. Should plaintiff learn the identities of the "Doe" parties he wishes to serve, he must promptly move pursuant to Rule 15 to file an amended complaint to add them as defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003). If the timing of his amended complaint

---

[3] Plaintiff misnumbered this Doe defendant (as Doe #2), as he is identified as a correctional officer who acted at 8:46 a.m. (ECF No. 1 at 20.) Because the time and job description tie this allegation to Doe #3, the Court will instruct the Clerk to change Doe #2 to Doe #3 on page 20, line 9.

[4] Plaintiff also misnumbered this Doe defendant (as Doe #3), as he is identified as a psych tech who acted at 2:45 p.m. (ECF No. 1 at 20.) Because the time and job description tie this allegation to Doe #4, the Court will instruct the Clerk to change Doe #3 to Doe #4 on page 20, line 29.

raises questions as to the statute of limitations, plaintiff must satisfy the requirements of Rule 15(c), which is the controlling procedure for adding defendants whose identities were discovered after commencement of the action. Additionally, unknown persons cannot be served with process until they are identified by their real names. The court will not investigate the names and identities of unnamed defendants. Plaintiff is granted leave to amend to add additional facts, if he can do so in good faith, as to Doe #1 and Doe #3.

V.      PLAINTIFF'S OPTIONS

Plaintiff may proceed forthwith to serve defendants Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, and Dr. A. Scrubbs, all employed at CMF, and defendant Correctional Officer S. O'Connor, employed at MCSP, and pursue his potentially cognizable Eighth Amendment claims against those defendants and Doe #2 and Doe #4. Or plaintiff may delay serving any defendant and attempt to state a cognizable claim against the remaining defendants. If plaintiff elects to proceed forthwith against defendant Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, Dr. A. Scrubbs, and Correctional Officer S. O'Connor, as well as Doe #2 and Doe #4, against whom he stated potentially cognizable Eighth Amendment claims for relief, then within thirty days plaintiff must so elect on the attached form. In this event, the Court will construe plaintiff's election as consent to dismissal of the Eighth Amendment claims against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3, without prejudice. Under this option, plaintiff does not need to file an amended complaint.

Or, plaintiff may delay serving any defendant and attempt again to state a cognizable claim against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3. If plaintiff elects to attempt to amend his complaint to state a cognizable claim against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3, plaintiff has thirty days to amend. Plaintiff is not granted leave to add new claims or new defendants.

Any amended complaint must show the federal court has jurisdiction, the action is brought

in the right place, plaintiff has complied with the California Government Claims Act, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act, or omits to perform an act he is legally required to do that causes the alleged deprivation).

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Id.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220; see Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading is superseded. Plaintiff is not granted leave to add new claims or new defendants.

11

VI. ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Claims against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3, are dismissed with leave to amend. Within thirty days of service of this order, plaintiff may amend his complaint to attempt to state cognizable claims against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3. Plaintiff is not obligated to amend his complaint.

4. The allegations in the complaint are sufficient to state potentially cognizable Eighth Amendment claims against defendants Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, Dr. A. Scrubbs, Correctional Officer S. O'Connor, Doe #2 and Doe #4. See 28 U.S.C. § 1915A. If plaintiff chooses to proceed solely as to such claims, plaintiff shall so indicate on the attached form and return it to the Court within thirty days from the date of this order. In this event, the Court will construe plaintiff's election to proceed forthwith as consent to an order dismissing the defective claims without prejudice.

5. Failure to comply with this order will result in a recommendation that this action be dismissed.

///

1        6. The Clerk of the Court is directed to interlineate the following changes to plaintiff's
2  complaint (ECF No. 1): (a) change Doe #2 to Doe #3 on page 20, line 9; and (b) change Doe #3
3  to Doe #4 on page 20, line 29.

5  Dated: May 8, 2025

                                                    CHI SOO KIM
                                                    UNITED STATES MAGISTRATE JUDGE

8  /1/hick1234.14o

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HICKS,<br><br>    Plaintiff,<br><br>  v.<br><br>T. BZOSKIE, et al.,<br><br>    Defendants. | No.  2:25-cv-1234 CSK P<br><br>NOTICE OF ELECTION |

Plaintiff elects to proceed as follows:

_____     Plaintiff opts to proceed with his Eighth Amendment claims against defendants Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, Dr. A. Scrubbs, and Correctional Officer S. O'Connor, and Doe #2 and Doe #4.  Under this option, plaintiff consents to dismissal of the Eighth Amendment against defendants H. Uppal, Dr. Zepp, Dr. F. Garmenda, Associate Warden R. Nuckles, Dr. S. Wong, and Correctional Sgt. A. Guzman, and Doe #1 and Doe #3, without prejudice.

**OR**

\_\_\_\_\_     Plaintiff opts to file an amended complaint and delay service of process.

DATED:

_____
                             Plaintiff