UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAMES HICKS,<br>Plaintiff,<br>v.<br>T. BZOSKIE, et al,<br>Defendants. | No. 2:25-cv-1234 DAD CSK<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff appears pro se and in forma pauperis in this civil rights action pursuant to 42 U S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The fully-briefed motion to dismiss filed by defendants T. Heng, J. Gerry, T. Bzoskie, A. Scrubb,[1] and S. O'Connor is before the Court. As discussed below, the Court recommends that this action be dismissed for failure to exhaust administrative remedies.

## I. PLAINTIFF'S ALLEGATIONS

In his verified complaint, plaintiff alleges the following. Plaintiff is a high risk medical patient, diagnosed with complex cardiovascular disease, who has undergone triple bypass

[1] Although plaintiff named "A. Scrubbs" as a defendant, defendants' motion to dismiss claims counsel represents "A. Scrubb" and affirmatively identifies "A. Scrubb" as a defendant. (ECF No. 31 at 1.) It appears plaintiff's complaint misspelled this defendant's name, and the Court will direct the Clerk's office to change the docket accordingly.

surgery, four arterial stents since 2021, and has frequent transient ischemic attack ("TIA") strokes, and takes nine prescription medications for his heart and hypertension. (ECF No. 1 at 11, 13.) The TIA strokes cause dizziness, numbness in plaintiff's face and right hand, inability to speak and atrial fibrillation. (Id. at 11.) In late 2023, plaintiff's primary care physician upgraded plaintiff's medical classification to specialized outpatient housing ("SOP") with medium intensity nurse monitoring as a medical precaution that requires headquarters approval to ensure rapid accessibility to a major heart hospital or university. (Id. at 11.) After plaintiff settled his prior case, Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P (E.D. Cal.), plaintiff was transferred to the California Medical Facility ("CMF"), where plaintiff positively programmed for three months. However, on December 10, 2024, plaintiff sustained a rules violation report ("RVR") for battery and was put in restrictive housing ("RHU").[2] (Id. at 14.) While housed in the RHU, plaintiff suffered a stroke on December 10, 2024, and was admitted to Vaca Valley Hospital. That same day, defendant Heng asked defendant Dr. Bzoskie to reduce plaintiff's level of care to "outpatient" in order to "facilitate greater prison transfer options."[3] (Id. at 14-15.) Dr. Bzoskie lowered plaintiff's medical level of care without examining plaintiff and at that time, neither defendant Heng nor Dr. Bzoskie knew plaintiff had been admitted to the hospital. (Id. at 15.) On January 8, 2025, plaintiff appeared before the classification committee where he learned that defendants Heng and Garry were transferring plaintiff to a basic care facility without HCPOP oversight. (Id.) When plaintiff objected that the transfer would put him at risk of harm, defendant Garry told plaintiff he "needed to be held accountable for his behavior." (Id.) Subsequently, plaintiff was admitted to the crisis bed at CMF from January 20, 2025, until his discharge on January 31, 2025. (Id.) Plaintiff contends that defendant Scrubb refused to consult with plaintiff while he was in the crisis bed, in violation of crisis bed policy and procedure. (Id.)

///

---

[2] Plaintiff, a level IV prisoner, admits that he is difficult to place due to his high classification score, repeated RVR's, and numerous enemies throughout the CDCR. (ECF No. 1 at 12.)

[3] Plaintiff explains that the CDCR has three major medical classifications: basic, intermediate and central. (ECF No. 1 at 12.) Prisoners who are medically classified as intermediate or central require oversight and placement by CDCR headquarters' Health Care Placement Oversight Program ("HCPOP") unit. (Id.)

On January 22, 2025, plaintiff's primary care physician ordered a walker for plaintiff due to repeated falls in his cell. (Id. at 16.) But later that same day, defendant Dr. Scrubb cancelled the walker order without examining plaintiff, noting the cancellation was for "another reason." (Id.) On January 27, 2025, the primary care physician reordered the walker in light of plaintiff's repeated falls. (Id.) The primary care physician told plaintiff that he was instructed by email from the "custody administration" not to alter plaintiff's medical classification; when plaintiff objected, the physician responded that he had to follow the administration's mandate and plaintiff should address the issue with his primary care physician after plaintiff's transfer. (Id. at 17.)

On February 1, 2025, plaintiff was transferred to Kern Valley State Prison ("KVSP"). (Id.)

On March 10, 2025, plaintiff was transferred to the Mule Creek State Prison ("MCSP") Enhanced Outpatient Program ("EOP") HUB RHU, where he continues to suffer TIA strokes.[4] On April 23, 2025, plaintiff suffered another stroke with dizziness and chest pain around 8:42 a.m. Plaintiff asked a nearby inmate to notify custody that plaintiff needed medical care. (Id. at 20.) The inmate did so, but the correctional sergeant "smiled and waved at plaintiff at approximately 8:46 a.m." (Id.) Plaintiff complained to another correctional officer, who stated "I'll let medical know," yet took no further action. (Id.) At 9:07 a.m. and 9:13 a.m., plaintiff told defendant S. O'Connor, a correctional officer at MCSP, that plaintiff was having chest pain and needed to see medical, but S. O'Connor did not inform medical until 9:17 a.m. (Id.) No one from medical responded, and plaintiff had another TIA stroke with aphasia, numbness and difficulty swallowing. (Id.)

## II. BACKGROUND

Plaintiff filed his complaint on April 25, 2025. (ECF No. 1.) In his complaint, plaintiff marked the boxes indicating administrative remedies were available, he filed a request for

---

[4] The Mental Health Services Delivery System Program Guide for the California Department of Corrections and Rehabilitation ("CDCR") provides four levels of mental health care services: Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient [Program] ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care. Coleman v. Brown, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

administrative relief as to his claims, and appealed his request for relief to the highest level. (ECF No. 1 at 6.) On May 8, 2025, this Court screened plaintiff's complaint, finding plaintiff stated cognizable Eighth Amendment claims against defendants Dr. T. Broskie, Associate Warden J. Garry, CCII T. Heng, and Dr. A. Scrubb, all employed at CMF, based on their intentional interference with plaintiff's serious medical needs, and against defendant S. O'Connor, a correctional officer employed at MCSP, based on S. O'Connor's failure to timely call for medical help, after which plaintiff suffered another stroke. (ECF No. 6 at 7.) The remaining defendants were dismissed with leave to amend. (Id. at 7-8, 10, 12.) On June 2, 2026, plaintiff elected to proceed solely as to the Eighth Amendment claims the Court found cognizable on May 8, 2025, and plaintiff's Eighth Amendment claims against the remaining defendants were dismissed. (ECF No. 14, ECF No. 17 at 5.)

On May 27, 2025, plaintiff filed a document styled, "Request for Leave Regarding Exhaustion of Administrative Remedies, in which he identifies grievance log numbers 703568 and 712176, and asks the Court to find that he had diligently "pursued and exhausted his administrative remedies." (ECF No. 13 at 2-3.) On June 12, 2026, this Court denied plaintiff's motion for leave regarding exhaustion because the failure to exhaust administrative remedies is an affirmative defense and plaintiff's request was premature. (ECF No. 16.)

On December 16, 2025, defendants filed a motion to dismiss this action based on plaintiff's failure to exhaust administrative remedies prior to filing this action. (ECF No. 31.)

On February 6, 2026, plaintiff filed a request for mediated case conference,[5] and a request for judicial notice, asking the Court to take judicial notice of his administrative appeals in log numbers 703568, 712176, and 685573. (ECF Nos. 41, 42.)

On February 12, 2026, the court filed plaintiff's opposition, and his request to take judicial notice of appeals in log numbers 474317 and 685573.[6] (ECF Nos. 44, 44-1.) Defendants filed a

---

[5] Initially, defendants interpreted this filing as plaintiff's opposition to the motion to dismiss and filed their reply on February 12, 2026. (ECF No. 43; see also ECF No. 45 at 1-2.) Because plaintiff's subsequent filing (ECF No. 44) contained legal arguments addressing defendants' motion to dismiss, defendants interpreted the later filing as plaintiff's intended opposition. (ECF No. 45 at 1-2.)

[6] Plaintiff's filings were put in the mail on January 23, 2026. (ECF No. 44 at 4.) However,

reply on February 24, 2026. (ECF No. 45.)

On April 14, 2026, plaintiff filed a request for additional judicial notice, citing appeal log number CMC HC 23000663, as well as his prior civil rights action, Hicks v. Gates, No. 24-cv-0054 DJC DMC P. (ECF No. 46.) On April 24, 2026, defendants filed a motion to strike plaintiff's April 14, 2026 request as improperly filed because the motion to dismiss is fully briefed and plaintiff did not seek leave to file a supplemental brief. (ECF No. 47.) On May 1, 2026, plaintiff filed an opposition to the motion to strike. (ECF No. 48.) On May 14, 2026, defendants filed a reply. (ECF No. 49.)

## III. PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

With his opposition to the motion to dismiss, plaintiff submitted a request for the Court to take judicial notice of two administrative grievances. (ECF No. 44-1.) He requests that the Court take judicial notice of plaintiff's administrative grievances, Appeal Log numbers 474317 and 685573. Defendants do not oppose this request in their reply. (ECF No. 45.)

> When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.

United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003).

For purposes of the present motion, the Court takes judicial notice of the existence and contents of the administrative grievances and their decisions in Appeal Log numbers 474317 and 685573. See Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). However, the court does not assume the truth of the facts asserted in the

///

---

plaintiff's opposition was due on January 6, 2026, 21 days after defendants filed and served their motion to dismiss. L.R. 230(m). Thus, plaintiff's opposition is untimely, even under the mailbox rule. However, because plaintiff proceeds pro se, the Court will consider his opposition.

documents. See Tri v. Gutierrez, 2024 WL 1801392, at *3 (E.D. Cal. Apr. 25, 2024) (citing M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983)).

Plaintiff's request for judicial notice (ECF No. 44-1) is granted.

## IV. DEFENDANTS' MOTION TO DISMISS

### A. The Prison Litigation Reform Act

It is well established that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 638-39 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). The exhaustion requirement applies to all prisoner suits relating to prison life. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736 (2001); see also Ross, 578 U.S. at 640, 642-43). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). As discussed in Ross, there are no "special circumstances" exceptions to the exhaustion requirement:

> language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust -- irrespective of any "special circumstances."

Ross, 578 U.S. at 638-39 (internal citations omitted).

"Nonexhaustion" is an affirmative defense, and the defendant has the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014). Following Albino, a failure to exhaust is properly raised in a motion for summary judgment or, in the rare occasion when the failure to exhaust is evident from the face of the complaint, in a motion to dismiss under

Rule 12(b)(6). Id. When it is clear on the face of the complaint that a plaintiff failed to exhaust administrative remedies, dismissal is proper. Id. at 1166. Failure to exhaust prior to the filing of the complaint mandates dismissal. See McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (requiring dismissal where prisoner fails to exhaust administrative remedies before filing suit and tries to do so while case is pending). Where feasible, "disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation." Albino, 747 F.3d at 1171. Failure to exhaust administrative remedies requires dismissal of the claim without prejudice. See Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (requiring dismissal without prejudice where prisoner fails to exhaust administrative remedies before submitting complaint to district court).

B. California's Regulations Governing Administrative Exhaustion

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with the prison's procedures. Woodford, 548 U.S. at 90. The appeal process is initiated by an inmate filing a "Form 602" the "Inmate/Parolee Appeal Form," and describing the specific issue under appeal and the relief requested. The California prison grievance system requires a two-step procedure for inmate grievances.[7] See Cal. Code Regs., tit. 15, § 3999.225-.230.[8] The first level of review is the institutional level of review. Id., § 3999.228(a). The second level of review is the headquarters level of review. Id., § 3999.230(a). The headquarters level is the final level of health care grievance review. Id., § 3999.230(h). "Time limits for processing a health care grievance appeal commence on the day it is received by the HCCAB[9] and shall be completed and returned to the patient within 60 business days, unless processed as an expedited health care grievance appeal pursuant to section 3999.233(b)." Cal. Code Regs. tit. 15,

[7] Effective June 1, 2020, California changed the grievance system from a three-level system to a two-level system. See Cal. Code Regs. tit. 15, § 3480.

[8] On July 1, 2024, certain subsections of § 3999 were amended, repealed and re-lettered "without regulatory effect." See Cal. Code Regs. tit. 1, § 100.

[9] HCCAB is an acronym for the Health Care Correspondence and Appeals Branch.

§ 3999.230(f). "An inmate exhausts administrative remedies by obtaining a decision at each level." Reyes, 810 F.3d at 657 (citation omitted).

C. Plaintiff's Administrative Grievances

In his opposition, plaintiff refers to two administrative grievances he contends would exhaust his administrative remedies as to the allegations raised in his complaint.

*1. Log No. 474317*

In this appeal, on November 3, 2023, plaintiff claimed that while he was housed at MCSP, he needed nursing assistance (monitoring) when showering because the hot water causes extreme dizziness and feels like he is having a TIA stroke. (ECF No. 44-1 at 4.) In addition to seeking nursing monitoring when showering, plaintiff sought "placement in an outpatient program." (Id.) The claim was denied on March 6, 2024. (Id. at 9.)

*2. Log No. 685573*

While plaintiff was housed at Kern Valley State Prison, he was interviewed on January 23, 2025, in connection with this request for reasonable accommodation in which he complained that he had severe leg, hip and back pain and had great difficulty walking with a cane. (ECF No. 44-1 at 12.) Plaintiff sought a walker or wheelchair and pain medication. (Id.) On February 21, 2025, the request for accommodation was denied. (Id. at 13.) On March 6, 2025, plaintiff signed an appeal of the denial (form 602-2) in Appeal Log No. 685573, and included his claim that defendant Dr. A. Scrubb discontinued the order for plaintiff to receive a walker. (ECF No. 44-1 at 15.) Plaintiff states this appeal was exhausted on May 6, 2025. (ECF No. 44-1 at 2.)

D. Plaintiff's Prior Civil Rights Action

In his opposition, plaintiff cites his prior lawsuit, Hicks v. Gates, No. 24-cv-0054 DJC DMC P (E.D. Cal.), in connection with his argument that he is not required to file and exhaust separate grievances each time he receives inadequate medical care for an ongoing medical condition. (ECF No. 44 at 1 (citing Lewis v. Naku, 2007 WL 3046013, *5 (E.D. Cal. 2007)).[10]

[10] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

In his verified complaint filed in Hicks v. Gates, No. 24-cv-0054 DJC DMC P, plaintiff challenged prison officials' failure to appropriately house plaintiff in a prison with specialized outpatient care due to his medical classification for medium intensity nursing care, as ordered by his physician, because custody staff insisted plaintiff must be housed in a Level IV prison due to plaintiff's classification score and disciplinary history. Hicks v. Gates, No. 24-cv-0054 DJC DMC P (ECF No. 1 at 9). Plaintiff confirmed there were available administrative remedies available at his institution, he submitted a request for administrative relief, and submitted his request for relief to the highest level. Id. (ECF No. 1 at 3.) Plaintiff stated that on July 1, 2023, he submitted an emergency grievance (Appeal Log No. CMC HC 23000663) in which he threatened to stop all heart, vascular and blood pressure medications until placement in an outpatient facility at CMF or California Correctional Health Care Facility. Id. (Docket No. 1 at 7-8). Plaintiff alleged that on September 27, 2023, a primary health care provider updated plaintiff's medical classification chrono to specialized outpatient with nursing care acuity as medium-intensity. Id. (Docket No. 1 at 8). Early on, before motion practice, the parties settled plaintiff's prior lawsuit among themselves, and the court record does not include the written settlement agreement. Id. (ECF No. 22); see also Docket.

E. Discussion

In the instant verified complaint, plaintiff confirmed that administrative remedies were available at plaintiff's institution. (ECF No. 1 at 6.) Also, in his opposition, plaintiff does not contend that administrative remedies were not available to him. (See ECF No. 44.) The Court observes that plaintiff has filed numerous grievances, as cited by plaintiff. (See ECF Nos. 41, 42, 44, 44-1.) The Court finds it is undisputed that administrative remedies were available to plaintiff at his institution.

Contrary to his statement in the complaint, plaintiff now admits his failure to exhaust his administrative remedies as to the named defendants prior to filing this action.[11] (ECF No. 44 at 3

[11] Indeed, in his request for mediated case conference, plaintiff states that he filed the instant complaint prior to administrative exhaustion. (ECF No. 41 at 2.) "Plaintiff moved forward in filing this complaint prior to administrative exhaustion based upon his understanding of the Lewis v. Naku doctrine that prisoners are not required to file and exhaust separate grievances each time

(plaintiff states he has submitted numerous grievances, and "[t]hose grievances became exhausted only after the filing of this complaint," admitting that defendants "are correct.") Instead, plaintiff now argues that the "foundation of TIA stroke, nurse monitoring and specialized outpatient housing were all established with administrative grievance, Appeal Log No. 474317, and he claims the associated problems continue to this day. (ECF No. 44 at 2-3.) In his opposition, plaintiff does not discuss his administrative grievance, Appeal Log No. 685573. (Id., passim.) As noted above, plaintiff also cites his prior case, Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P. Plaintiff argues that prisoners are not required to file and exhaust separate grievances each time they allege inadequate medical care for an ongoing condition, and that the main purpose of exhaustion is to alert the prison to a problem and facilitate its resolution. (ECF No. 44 at 1 (citing Lewis v. Naku, 2007 WL 3046013, *5 (E.D. Cal. 2007); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)). The Court addresses these prior documents by defendants.

*1. Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng*

Plaintiff is correct that a prisoner grievance that sets forth a complaint of a continuing nature may suffice to exhaust the prisoner's available administrative remedies. See, e.g., Lewis v. Naku, 2007 WL 3046013, at *5 (finding that a prisoner need not repeatedly exhaust the same grievance; "prisoners are not required to file and exhaust a separate grievance each time they allegedly receive inadequate medical care of an ongoing condition."). In Lewis, the prisoner maintained throughout his administrative grievances that he received inadequate medical care for back and knee injuries sustained in his prison welding job, and presented "the very same claim" in his complaint. Id. The court in Lewis found that "prison officials would not have been any[ ]more aware of the problem about which plaintiff was complaining had he re-started the grievance process each time he saw one of the defendants and continued to receive allegedly inadequate medical care for his back and knee injuries." Id.

Here, plaintiff alleges that his primary care physician has determined that plaintiff's complex and serious medical condition requires specialized outpatient housing with medium-

---

they allegedly receive inadequate medical care for an ongoing condition." (Id.)

intensity nursing supervision to ensure rapid accessibility to a major heart hospital or university. (ECF No. 1 at 11, 13; see also Hicks v. Gates, 2:24-cv-0054 DJC DMC P (ECF No. 1 at 7).) In his opposition, plaintiff relies on two prior grievances, Appeal Log No. 474317 and Appeal Log No. 685573, that challenged treatment for his medical condition. However, in the instant action, plaintiff alleges defendants Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng ignored plaintiff's serious medical classification and planned to transfer plaintiff to a basic care facility without HCPOP oversight required by his very serious medical condition. (ECF No. 1 at 15.) Thus, plaintiff's two prior grievances do not exhaust his instant claims.

However, it appears that plaintiff's claims challenging the actions by defendants Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng might be exhausted by plaintiff's administrative grievance underlying plaintiff's prior court case, Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P, in which plaintiff challenged such inappropriate housing. In his verified complaint, plaintiff affirmatively states that he exhausted the claims raised in that action. Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P (ECF No. 1 at 3.)

In order for this Court to determine whether plaintiff's prior grievance, Appeal Log No. CMC HC 23000663, would exhaust the claims against defendants Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng, particularly in applying Lewis v. Naku, 2007 WL 3046013, at *4-6, the Court must review the grievance and the responses to the grievance. None of the parties provided a copy of plaintiff's grievance, Appeal Log No. CMC HC 23000663, referenced in plaintiff's prior case. But defendants bear the burden to demonstrate plaintiff did not exhaust such claims. Albino, 747 F.3d at 1171-72. Without reviewing this grievance, this Court is unpersuaded by defendants' argument that because plaintiff received "specialized outcome" classification for 16 months, the instant allegations are novel rather than the result of an ongoing denial of care, requiring additional administrative exhaustion. Plaintiff may be able to demonstrate that his "specialized outcome" medical classification is an ongoing medical issue such that his grievance, Appeal Log No. CMC HC 23000663, was sufficient to exhaust his claims against defendants Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng. See Lewis v. Naku, 2007 WL 3046013, at *4-6. Plaintiff's verified allegations demonstrate that defendants Dr.

T. Broskie, Associate Warden J. Garry, and CCII T. Heng were aware of plaintiff's "specialized outcome" medical classification. Indeed, plaintiff alleges that custody staff defendant Heng asked Dr. T. Broskie to reduce plaintiff's level of care so plaintiff could be transferred. (ECF No. 1 at 14-15.) In addition, it appears plaintiff was transferred to CMF after he settled his prior lawsuit, Hicks v. Gates, No. 2:24-cv-0054 DJC DMC P. This Court cannot resolve these factual disputes on a motion to dismiss. Because defendants bear the burden to demonstrate exhaustion, their motion to dismiss plaintiff's Eighth Amendment claims against defendants Dr. T. Broskie, Associate Warden J. Garry, and CCII T. Heng should be denied without prejudice.

*2. Defendant Dr. A. Scrubb*

Although plaintiff sought judicial notice of grievance, Appeal Log No. 685573, he did not discuss its application in his opposition. (ECF No. 44.) Defendants did not address Appeal Log No. 685573 in their reply.[12] (ECF No. 45.) Despite such failures, the Court finds that Appeal Log No. 685573 would serve to exhaust plaintiff's claim concerning Dr. A. Scrubb's denial of a walker on January 22, 2025, because plaintiff included that claim in his form 602-2 grievance in Appeal Log No. 685573 submitted to the Office of Appeals. (ECF No. 44-1 at 15.) Plaintiff's form 602-2 in Appeal Log No. 685573 was signed on March 6, 2025, and plaintiff states this appeal was exhausted on May 6, 2025. (See ECF No. 44-1 at 2, 12-15.) Thus, Appeal Log No. 685573 was exhausted after plaintiff filed this action on April 25, 2025. Because plaintiff failed to exhaust the claim prior to filing this action, the claim should be dismissed without prejudice.

Similarly, plaintiff's prior grievances, Appeal Log No. 474317 and Appeal Log No. 685573, and the grievance exhausting his claims raised in his prior lawsuit, Hicks v. Gates, 2:24-cv-0054 DJC DMC P, would not serve to exhaust plaintiff's allegation that defendant Scrubb refused to consult with plaintiff while he was in the crisis bed, in violation of crisis bed policy and procedure. Plaintiff's medical treatment while housed in the crisis bed did not involve nurse

[12] Defendants did address Appeal Log No. 685573 in their prior reply filed in response to plaintiff's request for mediated case conference (ECF No. 41). (ECF No. 43 at 2-3.) However, defendants only point out that plaintiff failed to provide any documents showing Appeal Log No. 685573 was exhausted or was exhausted prior to the filing of the instant complaint. (Id. at 3.) Defendants do not indicate whether Appeal Log No. 685573 was exhausted after the instant complaint was filed.

monitoring while showering, the provision of a walker, or plaintiff's specialized medical classification. Thus, plaintiff's crisis bed claim should be dismissed without prejudice.

Therefore, the Court recommends that defendants' motion to dismiss plaintiff's claims against defendant Dr. A. Scrubb be dismissed without prejudice based on plaintiff's failure to exhaust his administrative remedies prior to filing this action.

*3. Defendant S. O'Connor*

The Court finds that the grievance exhausting plaintiff's claims raised in his prior lawsuit and the two prior grievances relied on by plaintiff would also not serve to exhaust plaintiff's administrative remedies as to plaintiff's claims against defendant S. O'Connor raised in this action. As noted, plaintiff's prior lawsuit addressed his need for specialized housing based on his specialized medical classification, unrelated to whether custody staff informed medical staff of plaintiff's urgent medical needs while plaintiff was housed at MCSP. In grievance, Appeal Log No. 474317, plaintiff claimed that at MCSP in 2023, plaintiff needed nursing assistance when showering because he was afraid of suffering a stroke, and requested nursing monitoring when showering and "placement in outpatient program." (ECF No. 44-1 at 4.) The claims in Appeal Log No. 474317 differ from those alleged herein where he claims defendant S. O'Connor failed to timely inform medical staff of plaintiff's urgent medical needs at a different prison on April 23, 2025. Because defendant S. O'Connor was custody staff, he would not have had notice of plaintiff's underlying medical issues. Finally, because Appeal Log No. 685573 was exhausted after the filing of this action, the Court need not consider whether it would suffice to exhaust plaintiff's claim against defendant S. O'Connor, a correctional officer at MCSP, concerning his acts or omissions on April 23, 2025.

F. <u>Conclusion</u>

Accordingly, defendants' motion to dismiss should be denied as to defendants Dr. T. Bzoskie, T. Heng, and J. Garry, and granted as to defendants Dr. A. Scrubb and S. O'Connor, and plaintiff's claims against them should be dismissed without prejudice. If the findings and recommendations are adopted, this action will proceed solely on plaintiff's claims against defendants Dr. T. Bzoskie, T. Heng, and J. Garry.

## V. REQUEST FOR MEDIATED CASE CONFERENCE

On February 6, 2026, plaintiff filed a request for mediated conference, accompanied by a request for judicial notice.[13] (ECF Nos. 41, 42.) This Court finds that a case conference is not indicated. Plaintiff's requests are denied.

## VI. DEFENDANTS' MOTION TO STRIKE JUDICIAL NOTICE REQUEST

On April 14, 2026, after briefing on defendants' motion to dismiss was closed, plaintiff filed a request for additional judicial notice, and on April 24, 2026, defendants filed a motion to strike the request. Plaintiff asks the Court to consider his grievance CMC HC 23000663, as well as his complaint filed in Hicks v. Gates, No. 24-cv-0054 DJC DMC P, but states he is unable to provide a copy of his grievance in CMC HC 23000663, and asks the Court to obtain it from defendants. (ECF No. 46 at 2.) Defendants object that plaintiff's filing is improper absent prior leave of court, and asks the Court to strike the request. (ECF No. 47 at 2 (citing L.R. 230(m)).) Plaintiff opposes the motion to strike, arguing that the Court should consider his request because the Court had not yet ruled on the motion to dismiss, and pro se filings should be liberally construed. (ECF No. 48 at 1-2.)

Defendants' motion to dismiss was filed on December 16, 2025, and despite plaintiff's untimely opposition, filed on February 12, 2026, the Court has considered the opposition. Defendants' motion was fully briefed on February 24, 2026. Plaintiff did not seek leave of court to file additional briefing. (See Docket.) Defendants' motion to strike is granted. Plaintiff is cautioned that although he is proceeding pro se, he is still required to meet court deadlines.

Ultimately, plaintiff's subsequent request to take judicial notice was unnecessary because plaintiff referred to his prior lawsuit in his complaint and in his opposition to defendants' motion to dismiss, and the Court determined, as discussed above, that it is relevant to whether plaintiff exhausted his claims as to defendants Dr. T. Bzoskie, T. Heng, and J. Garry.

## VII. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

---

[13] The three administrative grievances noted in this request were all exhausted after plaintiff filed the instant action on April 25, 2025. (ECF No. 42 at 2.)

1. Defendants' motion to strike (ECF No. 47) is granted, and the Clerk of the Court is directed to strike plaintiff's request for judicial notice (ECF No. 46).
2. Plaintiff's request for judicial notice (ECF No. 44-1) is granted.
3. Plaintiff's requests for mediated case conference and request for judicial notice (ECF Nos. 41, 42) are denied without prejudice.
4. The Clerk of the Court is directed to change the name of defendant A. Scrubbs to A. Scrubb.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 31) be denied without prejudice as to defendants Dr. T. Bzoskie, T. Heng, and J. Garry. This action should proceed solely on plaintiff's Eighth Amendment claims against defendants Dr. T. Bzoskie, CCII T. Heng, and Associate Warden J. Garry based on their intentional interference with plaintiff's serious medical needs.
2. Defendants' motion to dismiss be granted as to defendants Dr. A. Scrubb and S. O'Connor; plaintiff's claims against defendants Dr. A. Scrubb and S. O'Connor should be dismissed without prejudice.
3. The district court should refer this case back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

/ / /

/ / /

/ / /

/ / /

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 13, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/hick1234.mtd.fte